## AFFIDAVIT OF BRENDAN C. HICKEY

I, Brendan C. Hickey, being duly sworn, do depose and state that:

I. **INTRODUCTION**

1.   I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed for approximately four years.  I am currently assigned to Group IV in the ATF Boston Field Division, that in part, works with other federal, state and local police departments to investigate and prosecute violations of federal firearms, explosives and controlled substance laws.

2.   Prior to my employment with ATF, I was employed as a Special Agent with the United States Immigration & Naturalization Service for approximately five years, and before that I was employed as a United States Border Patrol Agent for approximately two years.  Prior to joining federal law enforcement, I was employed as a police officer, in both a uniform and in an undercover capacity, for approximately one and a half years. Throughout my law enforcement career, my primary duties have been focused on, or have involved, the investigation of narcotics and firearms violations.

3.   I am submitting this affidavit in support of an application for a criminal complaint and arrest warrant for **CARLOS RUBEN RIVERA** ("RIVERA") (year of birth: 1968), who resides at 508 Brock Avenue, New Bedford, Massachusetts, for violation of 21 U.S.C. § 841(a)(1) (possession with intent to distribute, and distribution of, a controlled substance, to wit, heroin and cocaine), and 18 U.S.C. § 922(g)(1) (felon in possession of ammunition). Based on my training and experience as an ATF Special Agent, I know that it is a violation of 18 U.S.C. § 922(g)(1) for any person who has been convicted of a felony to possess any firearm or ammunition in or affecting commerce, or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. I also know through my participation in firearms investigations and training that it is a violation of 21 U.S.C. § 841(a)(1) for any person to possess narcotics with the intent to distribute them.

4.   The information set forth herein is based on my personal knowledge, my review of RIVERA's Massachusetts Criminal History Record, and information provided to me by other law enforcement officers.

5.   This affidavit is being submitted for the limited purpose of establishing probable cause to believe that on April 1, 2004, RIVERA knowingly and intentionally possessed, with

intent to distribute, and distributed, heroin, a Schedule I controlled substance; that on April 19, 2004, RIVERA, having previously been convicted of a crime punishable by a term of imprisonment of more than one year, possessed ammunition in and affecting commerce; that on June 18, 2004, RIVERA knowingly and intentionally possessed, with intent to distribute, and distributed, cocaine, a Schedule II controlled substance. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation.

## II.   POSSESSION AND DISTRIBUTION OF HEROIN

6.   During the course of this investigation, I had a series of conversations with a confidential informant ("CI"), who voluntarily provided information concerning illegal narcotics and firearms transactions conducted by RIVERA, whom the CI knows personally. Among other things, the CI told me that RIVERA resides on the first floor of 508 Brock Avenue in New Bedford, and that the CI has met with RIVERA in that residence on several occasions. The CI also told me that he/she asked RIVERA if RIVERA could sell the CI narcotics and handguns, and that RIVERA told the CI on numerous occasions that he could, and would, sell the CI narcotics and handguns. RIVERA also told the CI that he had access to different types of handguns that he would try to

obtain and sell to the CI. I have been present during some of these telephone conversations between the CI and RIVERA, and have witnessed the CI discussing the purchase and sale of narcotics and firearms with RIVERA during phone calls made to and from RIVERA's cell phone number (508) 889-3023.

7. The CI first came to my attention through Det. Sgt. Paul Oliveira of the New Bedford Police in or about March of 2004. The CI, who had provided reliable information to Det. Sgt. Oliveira over the course of several weeks between April and March of 2004, also provided information to me over a period of several weeks that was corroborated by ATF and that proved to be reliable. Thereafter, the CI proved his/her reliability in this investigation by successfully making undercover narcotics and firearm purchases. Although the CI reported using marijuana and cocaine in the past, he/she reports no drug use in the past year. Further, during the course of this investigation, I have never observed the CI to be under the influence of alcohol or drugs.

8. The CI has an extensive criminal history record dating back to 1970, having, among other things, previously been convicted of drug conspiracy, assault and battery on a police officer, possession and distribution of a class A controlled substance (heroin), armed robbery, breaking and entering in the nighttime, and assault and battery with a dangerous weapon. The

4

CI's last conviction was in 1996. The CI presently has an open criminal matter pending in New Bedford District Court relative to alleged violations of the state narcotics law as well as allegedly carrying a dangerous weapon. The CI has received payment for his/her services in this investigation not exceeding $200.

9. During the course of this investigation, I subsequently learned that the property located at 508-510 Brock Avenue in New Bedford, is a two-story, three-family, clapboard structure with natural shingles, wood trim and a slate roof cover. The structure has three units, a driveway and an unattached garage, and is located on the east side of Brock Avenue in New Bedford, Massachusetts. There are two separate front entrances to the structure, which faces west, with steps leading from the walkway of 508-510 Brock Avenue, to the front common entrances 508-510 Brock Avenue, and, according to the City of New Bedford Assessor's records, is owned by RIVERA. The dwelling at number "508" consists of one apartment on the first floor, while the dwelling at number "510" consists of two separate apartments (referred to as "north" and "south"), both believed to be on the second floor. A utilities check was conducted for the first floor apartment at number "508" Brock Avenue, and revealed that the utilities for this apartment are listed under RIVERA's name.

A utilities check for number "510" Brock Avenue revealed that the second floor south apartment is occupied by a female, and that the second floor north apartment is vacant and controlled by RIVERA, as he is the owner of the entire property located at 508-510 Brock Avenue. A utilities check for the vacant apartment revealed that the utility electric bill is being forwarded to RIVERA at 508 Brock Avenue and that the bill is being paid by RIVERA.

10.   On April 1, 2004, the CI made an undercover controlled purchase of 10 grams of heroin from RIVERA. Specifically, at approximately 4:20 p.m., on this date, ATF Special Agents Robert J. White and John Pijaca conducted surveillance of the area in front of number 508 Brock Avenue. Simultaneously, in my presence, the CI placed a phone call to RIVERA. The CI told RIVERA he had money and was ready to "make it happen". The CI was referring to him/her purchasing a "finger" (approximately 10 grams) of heroin from RIVERA. The amount of heroin (10 grams) and the sale price ($1,000) were agreed upon by the CI and RIVERA through multiple prior telephone conversations, during some of which I was present. During these same conversations, there were also references made to RIVERA selling the CI a firearm at a future date. The conversation ultimately resulted in RIVERA telling the CI that he was ready for him/her, and to come by his

house immediately with the money.

11. Before departing for RIVERA's residence, the CI was outfitted with a body transmitter (electronic monitoring) and audio recording equipment in order to record the transaction between the CI and RIVERA. I then provided the CI with $1,000 in ATF funds to purchase the "finger" of heroin from RIVERA. I also searched the CI's vehicle and the CI's person for any personal money and/or contraband with negative results. The CI then departed for RIVERA's residence. ATF Special Agent Kenneth Croke and I maintained visual contact with the CI and the CI's vehicle until the CI arrived at RIVERA's residence, at which time SA White maintained visual contact with the CI until he/she entered RIVERA's residence at 508 Brock Avenue.

12. Moments later, surveillance units listened via the ATF transmitter as the CI knocked on the first floor apartment door at 508 Brock Avenue, entered, and conducted a narcotics transaction with RIVERA. During the course of the transaction, RIVERA discussed several different handguns with the CI that RIVERA stated he was attempting to procure for the CI.

13. After the CI completed the purchase, the CI departed RIVERA's residence, entered his/her car, and drove away. SA Croke and I were provided with the CI's direction of travel, and we immediately assumed visual contact with the CI's vehicle and

followed it to a prearranged location. At our prearranged location, SA Croke and I retrieved from the CI one clear plastic bag of suspected heroin, which was wrapped in aluminum foil. The CI stated that RIVERA requested $1,000 for the "finger" of suspected heroin. The CI confirmed that he/she had purchased the suspected heroin from RIVERA with the ATF funds he/she had been provided with. I subsequently searched the CI for additional contraband/currency with negative results. During the debriefing, the CI also stated that the drug transaction took place in the main room - a parlor. The plastic bag of suspected heroin was weighed and placed into evidence at the New Bedford Police Department by Det. David Conceicao. On May 20, 2004, the plastic bag and it's contents were examined and analyzed by the Commonwealth of Massachusetts Department of Public Health's State Laboratory Institute. The substance weighed 10.04 grams and was found to be heroin.

### III. POSSESSION AND DISTRIBUTION OF COCAINE

14. On June 18, 2004, at approximately 11:30 a.m., I witnessed a telephone conversation between the CI and RIVERA. RIVERA told the CI that he was "ready" for the CI. RIVERA was referring to an arrangement that he and the CI had made during conversations in the prior days, where RIVERA told the CI he would be ready to sell the CI cocaine on June 18, 2004. RIVERA

then instructed the CI to call RIVERA just prior to the CI arriving at RIVERA's residence at 508 Brock Ave, New Bedford.

15. Before departing for RIVERA's residence, the CI was outfitted with a body transmitter and audio recording equipment in order to record the transaction between the CI and RIVERA. I then provided the CI with ATF funds in the amount of $2,200 to purchase the cocaine from RIVERA. I also searched the CI's person, and Det. Sgt. Oliveira searched the CI's vehicle for any personal money and/or contraband with negative results. Det. Sgt. Oliveira, SA White and SA Sheila O'Hara were already conducting surveillance at RIVERA's residence when the CI placed a second call to RIVERA, notifying him that the CI would be arriving shortly. SA Croke and I followed the CI from the pre-arranged meeting location to RIVERA's residence, at which time the aforementioned surveillance units assumed the surveillance of the CI.

16. The CI entered the front door of 508 Brock Ave, while the surveillance units listened to the audio monitoring equipment. The CI had a brief discussion with RIVERA, at which time RIVERA agreed to sell the CI one (1) ounce of cocaine for $1,100 in U.S. currency. I then heard RIVERA tell the CI to wait in the first floor apartment while RIVERA retrieved the cocaine. At that time, the CI saw RIVERA walk through RIVERA's kitchen at

the rear (east) end of the first floor apartment, through the rear door of the apartment, into a hallway, and ultimately up a flight of stairs leading to the second floor inside, rear area of the dwelling located at 510 Brock Avenue. When RIVERA left the first floor apartment and went upstairs he had no property (e.g., plastic baggies, scale or other drug paraphernalia) on his person. Once upstairs, RIVERA remained there for approximately four or five minutes before returning to the first floor apartment with a plastic baggie filled with cocaine. RIVERA handed the cocaine to the CI, and the CI and RIVERA then discussed future purchases of crack cocaine that RIVERA stated he would be able to facilitate for the CI.

17. The CI subsequently departed 508 Brock Ave, at which time surveillance units notified me of the CI's direction of travel. SA Croke and I maintained continuous visual contact with the CI once the surveillance units relinquished their surveillance of the CI. At our pre-arranged meeting location, the CI gave me a clear plastic bag containing suspected cocaine. The CI confirmed that he/she had purchased the suspected cocaine from RIVERA with the ATF funds that he/she had been provided with. The CI also confirmed that he/she paid RIVERA $1,100 for the suspected cocaine. The CI returned the remaining $1,100 that he had been given in ATF funds to me. I subsequently searched

10

the CI for additional contraband/currency with negative results.

18. The plastic bag of suspected cocaine was weighed by Det. Sgt. Oliveira and placed into evidence at the New Bedford Police Department. Det. Sgt. Oliveira confirmed that the suspected cocaine weighed approximately 29.2 grams. Det. Sgt. Oliveira also field tested the substance with a Scott Reagent kit, and confirmed that the substance tested positive for cocaine base.

19. Further, Det. Sgt. Oliveira was also able to verify through Nick Gianturco of Commonwealth Electric that apartment 510 North on the second floor has an active electricity bill sent to RIVERA at RIVERA's 508 apartment. Det. Sgt. Oliveira also confirmed through a check with the City of New Bedford Assessor's Office that RIVERA has owned the entire dwelling and property at 508-510 Brock Avenue for approximately a year and a half.

### IV. FELON IN POSSESSION OF AMMUNITION

20. On April 19, 2004, at approximately 4:30 p.m., the CI made an undercover controlled purchase of a firearm and ammunition from RIVERA. Specifically, on this date, the CI spoke with RIVERA and made arrangements to purchase a firearm from RIVERA. In the presence of ATF Special Agent Stephanie Schafer and Det. Sgt. Oliveira, the CI called RIVERA and made plans to purchase the firearm at RIVERA's residence at 508 Brock Avenue.

Prior to departing for RIVERA's residence, the CI was searched by Det. Sgt. Oliveira and outfitted with a body transmitter and audio recording equipment in order to record the transaction between the CI and RIVERA. The CI's vehicle was also searched. The CI was provided with $400 in ATF funds by SA Schafer and was then followed to 508 Brock Avenue by ATF Special Agent Angelo "Tony" Thurman and Det. Sgt. Oliveira. On the way to RIVERA's residence, the CI received a phone call from RIVERA wherein the RIVERA told the CI that RIVERA was ready to make the deal. The CI informed RIVERA that he/she was on the way to RIVERA's house and would meet RIVERA there.

21. A short while later the CI arrived at 508 Brock Avenue and waited for RIVERA. ATF Special Agent Matthew O'Shaughnessy and Det. Christopher Dumont of the New Bedford Police Department observed the CI park his vehicle near the residence, and a few minutes later observed a dark-colored Ford truck pull into the driveway of 508 Brock Avenue. The CI was then observed walking around the side of the house to towards the rear of the building. The CI was also heard conversing with RIVERA on the electronic audio transmitter device, and was heard telling RIVERA that he/she was sick of the problems on the streets and was going to go take care of a few things when he/she left with the firearm. RIVERA was heard telling the CI that "the only good thing about

those (revolvers) is that they never get jammed - that's why the Mafia uses them" RIVERA also told the CI to "be safe" as he/she was leaving the residence.

22. A few minutes later, the CI was observed in the rear porch area of 508-510 Brock Avenue holding a plastic bag and speaking with RIVERA. The CI (still holding the plastic bag) then walked to the trunk of his/her vehicle, placed the bag in the trunk and departed the area. SA O'Hara and Det. Jason Gomes of the New Bedford Police Department followed the CI back to the predetermined meeting location. The CI turned over to SA Schafer a plastic bag labeled "Suncoast," which contained a U.S. Postal Service priority mail box and a "Stop and Shop" plastic bag. Inside the priority mail box was an Iver Johnson .38 caliber revolver bearing serial number H25373. Inside the "Stop and Shop" plastic bag was a box of Remington .38 caliber ammunition with fifteen (15) spent shell casings and thirty-four (34) live rounds.

23. Further, during debriefing, the CI told SA Schafer, among other things, that they went inside 508 Brock Avenue and entered a kitchen/pantry area, where RIVERA pulled out the U.S. Postal Service priority mail box containing the firearm from under a sink area. The CI confirmed that he paid RIVERA for the firearm and ammunition with the ATF funds he was provided with.

13

IV.  **INTERSTATE COMMERCE**

24.  According to SA Tony Thurman, who has been trained as an interstate nexus expert, has confirmed that no Remington manufactured ammunition is made in Massachusetts, and therefore the ammunition described in paragraph 22 above was manufactured outside of the Commonwealth of Massachusetts.  Therefore, the ammunition would have had to travel in interstate commerce before RIVERA possessed it on April 19, 2004.  Further, according to SA Thurman, Iver Johnson revolvers at one time were manufactured in the Commonwealth Massachusetts, but are no longer.  However, because SA Thurman is unable at this time to determine the year the firearm described in paragraph 22 above was manufactured, he is unable at this time to confirm the interstate nexus relative to this firearm.

V.  **FELONY CONVICTION**

25.  RIVERA's Massachusetts Criminal History Record indicates that RIVERA was convicted in Bristol Superior Court in 1995 of possession of a controlled substance with intent to distribute a class B substance, to wit, cocaine, which is a crime punishable by a term of imprisonment greater than one.

26.  Based on the foregoing, there is probable cause to believe that, on April 1, 2004, in New Bedford, Massachusetts, **CARLOS RUBEN RIVERA** knowingly and intentionally possessed, with

intent to distribute, and distributed, heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1), that on April 19, 2004, in New Bedford Massachusetts, **CARLOS RUBEN RIVERA**, having previously been convicted of a crime punishable by a term of imprisonment of more than one year, possessed ammunition in and affecting commerce, in violation of 18 U.S.C. § 922(g)(1), and that on June 19, 2004, in New Bedford, Massachusetts, **CARLOS RUBEN RIVERA** knowingly and intentionally possessed, with intent to distribute, and distributed, cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

BRENDAN C. HICKEY
Special Agent, Bureau of
Alcohol, Tobacco, Firearms and
Explosives

Sworn to and subscribed before me this 22nd day of June, 2004.

CHARLES B. SWARTWOOD III
United States Magistrate Judge

| Criminal Case Cover Sheet | U.S. District Court - District of Massachusetts |
|---|---|

**Place of Offense:** _____  **Category No.** __II__  **Investigating Agency** __ATF__

**City** New Bedford  **Related Case Information:**

**County** Bristol

Superseding Ind./ Inf. _____  Case No. _____
Same Defendant __X__  New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

**Defendant Name** CARLOS RUBEN RIVERA  **Juvenile** ☐ Yes  ☒ No

**Alias Name** _____

**Address** 508 Brock Avenue, 1st Floor, New Bedford, MA 02741

**Birth date (Year only):** 1968  **SSN (last 4 #):** 8635  **Sex** M  **Race:** H  **Nationality:** U.S.A.

**Defense Counsel if known:** _____  **Address:** _____

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA** Antoinette E.M. Leoney  **Bar Number if applicable** 545567

**Interpreter:** ☐ Yes ☒ No  **List language and/or dialect:** N/A

**Matter to be SEALED:** ☐ Yes ☒ No

☐ Warrant Requested  ☐ Regular Process  ☐ In Custody

**Location Status:**

**Arrest Date:** _____

☐ Already in Federal Custody as _____ in _____
☐ Already in State Custody _____  ☐ Serving Sentence  ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by _____ on _____

**Charging Document:**  ☐ Complaint  ☐ Information  ☐ Indictment

**Total # of Counts:**  ☐ Petty _____  ☐ Misdemeanor _____  ☒ Felony  3

Continue on Page 2 for Entry of U.S.C. Citations

☒  I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

**Date:** June 22, 2004  **Signature of AUSA:** *[signature]*

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

District Court Case Number (To be filled in by deputy clerk): _____

Name of Defendant   CARLOS RUBEN RIVERA

U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 21 U.S.C. §841(a)(1) | Possession and Distribution of Controlled Drugs | 1, 2 |
| Set 2 | 18 U.S.C. §922(g)(1) | Felon in Possession of Ammunition | 3 |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

ADDITIONAL INFORMATION: _____

crim.cov.JS45.wpd - 1/15/04 (USAO-MA)