UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
        v.                      )    CRIMINAL NO. 04-10192-NG
                                )
CARLOS RUBEN RIVERA             )

DEFENDANT'S MOTION FOR REVIEW OF DETENTION ORDER
BY DISTRICT COURT JUDGE

Defendant, Carlos Ruben Rivera, moves, pursuant to 18 U.S.C. § 3145(b), that the District Court revoke the order detaining him.  See Order of Detention, attached hereto as Exhibit A.  As grounds for this motion, defendant states that there are conditions that would both reasonably assure the safety of the community and reasonably assure that he will appear in court as required.

**STATEMENT OF FACTS**

Personal History

Mr. Rivera is a 36 year-old U.S. citizen who has lived in New Bedford since the age of 10.  He was born in 1968 in Puerto Rico, the fourth of five siblings.  Mr. Rivera's parents, Nilda Rodriguez Fontanez and Victor Rodriguez, split up in the mid '70's.  Mr. Rodriguez had little interest in maintaining ties either to Nilda Fontanez or his family and his whereabouts are currently unknown to anyone in the family.  In 1978, Mr. Rivera (then 10 years old) moved with his mother and siblings to New Bedford.  The entire family has remained in Massachusetts since

that time.  Mr. Rivera's mother, Nilda Fontanez, is also a U.S. Citizen who currently on disability.  All but one of Mr. Rivera's siblings reside in the same neighborhood in New Bedford; the remaining brother lives in Plymouth.

Mr. Rivera received an adult diploma from New Bedford High School in 1987.  He attended both Bristol County Community College and the University of Massachusetts at Dartmouth in the late '80's and early '90's.  During the same period, unfortunately, Mr. Rivera became involved in the street life of New Bedford and wound up with the legal difficulties that resulted, five years later, in a one-year sentence to the Dartmouth House of Correction.

Determined to turn his life around, Mr. Rivera, upon his release from the jail sentence in 1995, pursued training as a heavy equipment operating engineer.  He successfully completed the rigorous training and apprenticeship programs and obtained a license in 1997.  He joined the International Operating Engineers Union Local #4 in Boston in 1999 and has been employed steadily through the union since then.  At the time of his surrender to the authorities in the instant matter, Mr. Rivera was earning an hourly rate of $35.50 through Don Martin Construction.  Don Martin Construction has employed Mr. Rivera for the last two years; before that, Mr. Rivera was employed by the Tilcon Capaldi Co. of New Bedford for five years.

Mr. Rivera has been married to Raubecka Rivera (neé Texeira) for the past seven years. The Rivera's actual romantic relationship predated their marriage: the couple have known each other for more than 17 years. The couple have two children; Kaitlyn Rivera is 14 years old and Carlos Rivera, Jr. is 10 years old.

The relationship has, at times, been contentious. Ms. Rivera sought temporary restraining orders at different stages of the marriage. There was no active restraining order in effect, however, at the time of Mr. Rivera's arrest and the couple had been living together for the year proceeding the offenses at issue. Although at the time of Mr. Rivera's surrender to police the couple was undergoing a trial separation, with Mr. Rivera staying in the marital home while Raubecka had her own apartment, the couple negotiated and implemented a shared custody arrangement for the children and Mr. Rivera exercised regular visitation with them. Ms. Rivera is supportive of Mr. Rivera despite his arrest and the couple have agreed that Mr. Rivera will live at the multi-family home they jointly own at 508 Brock Ave. in New Bedford.

The Riveras have owned and rehabilitated a total of three homes, all in New Bedford, over the past eight years. They have owned the current home on Brock Ave. for two years, having obtained it with a down payment of $32,000. Although Mr. Rivera

-3-

estimates the present value of the property at $325,000, the home is heavily leveraged; the couple has spent significant sums to rehabilitate the other two units in the building to prepare them for rental.  As a result, the couple faces a monthly mortgage payment of $1,800 as well as substantial debt service on home improvement loans.  Although two of the units have been completed and are now rented, the other stands vacant as Mr. Rivera had not yet finished repairing the unit at the time of his surrender to authorities.  Ms. Rivera reports that the couple is now in arrears on the mortgage and she fears foreclosure of the property without the additional income either from Mr. Rivera or the rental unit.

The Detention Hearing

Magistrate-Judge Charles B. Swartwood, III conducted a detention hearing on June 28, 2004.  On July 2, 2004, he ordered the defendant detained.

The lone witness at the detention hearing was Special Agent Brendan Hickey of the Bureau of Alcohol, Tobacco, and Firearms.[1] Hickey testified to a joint Federal and New Bedford investigation into drugs and firearms that took place from March to June 2004

---

[1] In order to avoid repeating the testimony summarized in Magistrate-Judge Swartwood's memorandum, the summary of testimony set forth here is confined to those facts omitted from the Memorandum or needed to clarify the summary set forth in the Memorandum.  The full transcript of the June 28, 2004 hearings is attached as Exhibit B.

-4-

in the city of New Bedford.  The investigation utilized a
confidential informant; Hickey was the informant's handler.  The
informant knew Mr. Rivera on a personal level and, using this
personal connection, arranged three transactions with him:  one
for heroin, one for a firearm and ammunition, and the last for
cocaine.  Each occurred at defendant's home and was tape
recorded.  The agent conceded that it was at his suggestion that
the confidential informant solicited Mr. Rivera for a gun, and
that Mr. Rivera was not able to immediately consummate the
transaction upon request.  Instead, the confidential informant
made repeated requests of Mr. Rivera before Mr. Rivera agreed to
and was able to provide the firearm.

     The investigation involved many different targets around New
Bedford.  As a result, Mr. Rivera was not immediately arrested
after the last transaction with the informant.  Rather, law
enforcement agents prepared arrest and search warrants to be
executed, the extent practical, at the same time.  In Mr.
Rivera's case, police went to the house at 508 Brock Ave. to
execute the search warrant at 6:00 a.m. while Mr. Rivera was at
work at a construction site in Boston.  His children, however,
were present in the home and, after agents indicated the nature
of their presence in the home, contacted family members who
attempted to contact Mr. Rivera at his work site.  Mr. Rivera
finally received a call on his cell telephone and in turn

contacted an attorney whom he knew from past experience, Patrick Walsh of New Bedford. Mr. Rivera, on Attorney Walsh's advice, traveled to Walsh's office and the two of them went to the New Bedford Police Department. At 2:30 p.m. that same day, Mr. Rivera turned himself in to a New Bedford detective and ATF agent.

No contraband was recovered at Mr. Rivera's home during the execution of the search warrant.

**ARGUMENT**

I.  THE MAGISTRATE-JUDGE ERRED IN ORDERING DETENTION.

    A.  The Magistrate Judge Erred in Determining that There Were No Conditions of Release that Would Reasonably Assure the Safety of the Community Were Mr. Rivera Released.

The Memorandum and Order on the Government's Motion for Detention concludes that "there are no conditions or combinations of conditions that I can impose that would assure the safety of any person or persons in the community if [Mr. Rivera] were released." Memorandum at 10. The Memorandum cited Mr. Rivera's 1995 state court conviction for possession of cocaine, additional connected charges that were filed without a finding, and the restraining orders that had been taken out by Ms. Rivera, as reasons that defendant was a danger to the community. Additionally, the Magistrate Judge concluded that Mr. Rivera was liable for the informant's statement that he intended to use the

purchased firearm to "take care of problems on the street."  Id.
at 9.  The Magistrate Judge did not discuss any less restrictive
alternatives to pretrial detention.

The Bail Reform Act provides, in relevant part, for release
of defendants on personal recognizance "unless the judicial
officer determines that such release will not reasonably assure
the appearance of the person as required or will endanger the
safety of any other person or the community."  18 U.S.C.
§ 3142(b).  If personal recognizance is found insufficient to
reasonably assure the appearance of the defendant or will
endanger the safety of the community, then the judicial official
is directed to order pretrial release on "the least restrictive
further condition, or combination of conditions, that such
judicial officer determines will reasonably assure the appearance
of the person as required and the safety of . . . the community."
18 U.S.C. § 3142(c)(1).  Detention is permitted only if "the
judicial officer finds that no condition or combination of
conditions will reasonably assure the appearance of the person as
required and the safety . . . of the community."  18 U.S.C.
§ 3142(e).

> The statutorily mandated progression from one choice to
> the next is critical:  a judicial officer cannot
> determine that a detention hearing and the possible
> imposition of pretrial detention is appropriate merely
> by determining that release on personal recognizance
> will not 'reasonably assure' the defendant's appearance
> at trial or 'will endanger' the community.  The

judicial officer must also consider whether one of the
codified conditions or any combination of the
conditions will 'reasonably assure' the defendant's
appearance and the safety of the community.  The wide
range of restrictions available ensures, as Congress
intended, that very few defendants will be subject to
pretrial detention.

United States v. Orta, 760 F.2d 887, 890-91 (8th Cir. 1985)

(reversing detention order despite applicability of statutory

presumption based on drug charge).

Detention is not justified because a person presents any

risk of danger to the community.  The presence of a risk requires

a further analysis:  the determination of what condition or

combination of conditions would reasonably assure that the

community would not be endangered by a defendant's release.[2]

That analysis was not performed in this case.

A proper analysis of the risk of further danger to the

community would have revealed that the risk was exceedingly low.

The prior conviction was remote in time and Mr. Rivera

demonstrated that he had been able to comply with court-ordered

supervision, and the judge gave undue weight to the now ancient

dismissed charges associated with it.  Moreover, the Magistrate

Judge was unduly influenced by the existence of the restraining

---

[2]The Bail Reform Act suggests a panoply of conditions that
might be imposed in conjunction with release, including
requirements that a defendant work, reside at a specific address,
and/or be intensively monitored.  See 18 U.S.C. § 3142.  The
Magistrate Judge did not address the effect of any of these less-
restrictive alternatives.

orders, given the couple's demonstrated success in repairing their relationship and Ms. Rivera's strong support of Mr. Rivera. Finally, the Magistrate Judge appeared to rely heavily upon an inference that defendant's failure to respond to the informant's statement indicated acquiescence to the potential activities of the informant. Defendant submits that a comment by the <u>informant</u>, plucked from what appears to be a lengthy course of conduct between defendant and the informant, is too slender a reed to support an inference that Mr. Rivera is an inherently dangerous person.[3]

In any event, whatever inference of risk that may be drawn is easily remedied by imposition of the less restrictive conditions suggested by the statute such as a curfew, house arrest, and intensive monitoring by Pretrial Services. In these circumstances, had the Magistrate Judge erred in adequately considering alternative conditions.

     B.    The Magistrate-Judge Erred in His Finding that the Defendant's Significant Ties to the District Generally and New Bedford Specifically Were Outweighed By His "Record of Defaults."

As to Mr. Rivera's risk of flight, the Memorandum conceded that "Mr. Rivera has substantial ties to the New Bedford area, where his wife, two children and mother and siblings reside," and

_____

[3]Defendant has not yet received any audiotapes of the recorded transactions in discovery.

that "Mr. Rivera self-surrendered when notified of a warrant for
his arrest in connection with this Complaint."  Memorandum at 10.
Detention was nevertheless warranted, according to the Magistrate
Judge, because "Mr. Rivera faces a substantial period of
incarceration" and that his "record of defaults" indicated a risk
of flight."  Id.

First, the judge's analysis ignores the quality of the
respective ties.  Defendant's entire family, including his two
children are all long-term and lifetime residents of
Massachusetts who are extremely unlikely to follow him out of the
district were he to decide to abscond.  Defendant has a home he
owns in New Bedford and all of his close and extended family
members are in the immediate vicinity.  The "record of defaults"
cited by the Magistrate Judge are far outbalanced by these
substantial demonstrable ties.

Second, the Magistrate Judge misapprehended to nature of the
defaults in Mr. Rivera's record and ignored significant indicia
in the record that strongly suggests Mr. Rivera is not a flight
risk.  Chief among this indicia is the fact that Mr. Rivera was
released on the 1990 drug case from state court and remained on
bail without difficulty for almost five years.  In that case, Mr.
Rivera made all of his court dates including a change of plea
hearing where a period of incarceration was the certain outcome.
Moreover, Mr. Rivera, after his release from jail on that charge,

-10-

successfully completed a two-year period of probation without
incident.  Balanced against this substantial indicia of
reliability are the defaults cited by the court, which appear to
be in the nature of technical defaults rather than willful
attempts to evade court obligations.

Finally, the magistrate-judge overstated the potential
penalty defendant faces.  Although it is true that the
transactions involved heroin, cocaine and a weapons, the weight
of the drugs at issue are relatively small and do not invoke any
mandatory minimum sentence.  Similarly, there has been no
suggestion that the weapon sold was done so during and in
relation to the drug offenses; consequently, Mr. Rivera does not
face any statutorily mandated consecutive sentence.

    B.    The Magistrate-Judge did not Make the Finding
           Necessary to Support Detention.

The Memorandum concludes simply that "there are no
conditions or combination of conditions that could be imposed to
assure" the defendant's appearance in court because of the
possible sentence and the "record of defaults."  Memorandum at
10.  That conclusion is inadequate to justify detention and
applies an erroneous legal standard to the government's motion
for detention.

As in risk of danger to the community, the Bail Reform Act
provides for release of defendants on personal recognizance

-11-

"unless the judicial officer determines that such release will
not reasonably assure the appearance of the person as
required[.]"  18 U.S.C. § 3142(b).  If personal recognizance is
found insufficient to reasonably assure the appearance of the
defendant, then the judicial official is directed to order
pretrial release on "the least restrictive further condition, or
combination of conditions, that such judicial officer determines
will reasonably assure the appearance of the person as
required[.]"  18 U.S.C. § 3142(c)(1).  Detention is permitted
only if "the judicial officer finds that no condition or
combination of conditions will reasonably assure the appearance
of the person as required[.]"  18 U.S.C. § 3142(e).

     Consequently, detention is not justified because a person
presents a risk of nonappearance.  A risk of nonappearance
requires a further analysis:  the determination of what condition
or combination of conditions would reasonably assure the
appearance of the person.  See Orta, 760 F.2d at 890 (judicial
officer must also consider whether one of the codified conditions
or any combination of the conditions will 'reasonably assure' the
defendant's appearance).  That analysis was not performed in this
case.  The Magistrate-Judge's memorandum misjudged the strength
of the defendant's family ties to New Bedford, nowhere addressed
the adequacy of any alternative conditions, and neither drew nor
justified a conclusion that they were inadequate.

Had the analysis required by § 3142 been conducted, it would have resulted in a conclusion that reporting to and monitoring by Pretrial Services would reasonably assure against any risk of flight.

<u>REQUEST FOR HEARING</u>

Defendant respectfully requests a hearing on this motion.

CARLOS RUBEN RIVERA
By his Attorney,


/s/ Timothy G. Watkins
Timothy G. Watkins
  B.B.O. #567992
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Tel: 617-223-8061

---

<u>CERTIFICATE OF SERVICE</u>

I, Timothy G. Watkins, hereby certify that a true copy of the above document was served upon Assistant United States Attorney Antoinette Leoney by ECF and upon U.S. Pretrial Services Officer September Lee Brown by regular interoffice delivery on September 7, 2004.


/s/ Timothy G. Watkins
Timothy G. Watkins