# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

04-10194-NG

UNITED STATES OF AMERICA       .
         Plaintiff            .

                       .
                       .
           v.               .
                       .

CARLOS RUBEN RIVERA         .
         Defendant           .

                       .
                       .
. . . . . . . . . . . . . . . .

TRANSCRIPT OF PROBABLE CAUSE AND
DETENTION HEARING
BEFORE THE HONORABLE CHARLES B. SWARTWOOD, III
UNITED STATES MAGISTRATE JUDGE
HELD ON JUNE 28, 2004

APPEARANCES:

For the Government:  Attorney Antoinette Leoney, U.S. Attorney's
Office, One Courthouse Way, Boston, MA  02210.


For the Defendant:  Timothy Watkins, Esquire, Federal Defender
Office, 408 Atlantic Avenue, Third Floor, Boston, MA  02210;
(617) 223-8061.


Court Reporter:



Proceedings recorded by digital sound recording, transcript
produced by transcription service.

---

*MARYANN V. YOUNG*
Certified Court Transcriber
240 Chestnut Street
Wrentham, Massachusetts 02093
(508) 384-2003

2

1                          I N D E X

2   WITNESSES          DIRECT     CROSS      REDIRECT        RECROSS

3   Brendan Hickey      4          15          33              36

4

5

6

7   EXHIBITS   DESCRIPTION                                   IN EVID.

8   Government's:

9     1      Affidavit in support of Complaint                  8

10    2      Certified Copy Conviction-Bristol Superior        13

11    3      Drug analysis Report                              36

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                    P R O C E E D I N G S

2    (Court called into session)

3            THE CLERK:  Today's date is June 28, 2004 in the case

4    of USA v. Carlos Rivera, Criminal Action No. 04-1789-CBS.  Will

5    counsel please identify yourself for the record.

6            MS. LEONEY:  Good morning, your Honor, Antoinette

7    Leoney for the United States.

8            THE COURT:  Good morning.

9            MR. WATKINS:  Good morning, your Honor, Tim Watkins,

10   Federal Defender Office, at counsel table with Carlos Ruben

11   Rivera.

12           THE COURT:  And good morning, Mr. Watkins, and good

13   morning, Mr. Rivera.

14           We're here for a consolidated probable

15   cause/detention hearing.  The grounds stated by the government

16   at your initial appearance were dangerousness, 1(A), 1(C), and

17   risk of flight (2)(A).

18           Ms. Leoney, are you ready to proceed?

19           MS. LEONEY:  Yes, your Honor.  The government is

20   ready.

21           THE COURT:  Call your witness.

22           MS. LEONEY:  The government calls Brendan Hickey to

23   the stand.

24      (Government witness, Brendan Hickey, sworn)

25           THE CLERK:  Could you state your name and spell your

1    last name for the record.

2              THE WITNESS:  Brendan Hickey, H-I-C-K-E-Y.

3              THE COURT:  Good morning.

4                        DIRECT EXAMINATION

5    BY MS. LEONEY:

6    Q    And where are you employed please?

7    A    I'm employed in Boston at the bureau of Alcohol, Tobacco,

8    Firearms and Explosives.

9    Q    And what is your position there?

10   A    I'm a special agent.

11   Q    And how long have you been there?

12   A    Approximately four years.

13   Q    And prior to being employed by the ATF, where were you

14   employed?

15   A    I was a criminal investigator or special agent with the

16   Immigration and Naturalization Service in the Province of

17   Puerto Rico and prior to that for the Border Patrol.

18   Q    And how long have you been a special agent or Border

19   Patrol officer?

20   A    Approximately 10 years.

21   Q    And I draw your attention to the instant matter involving

22   in Carlos Rivera.  Are you the principal case agent with

23   respect to that investigation?

24   A    I am.

25   Q    And how long have you been investigating Mr. Rivera with

5

1    respect to the criminal complaint that's pending before the

2    court?

3    A    Since the very end of March.

4    Q    And during the course of your investigation, have you, for

5    the most part, been, worked with other agents and/or police

6    officers?

7    A    Yes, I have.

8    Q    An with respect to the police officers that you've worked

9    with, which department do they belong to?

10   A    The New Bedford police department.

11   Q    And specifically what officers have been involved in the

12   investigation?

13   A    Detective Paul Olivera and Detective Chris Dumont,

14   Detective David Conscacio (ph).   That's it.

15   Q    And with respect to the ATF agents that you've been, that

16   have worked with you in this investigation, is it a specific

17   group that has been involved with you?

18   A    Yes, it is.   It's the group that I'm assigned to, Boston

19   Group 4, which covers all of, everything south of Boston,

20   metropolitan area and everything north.

21   Q    And with regard to this specific investigation, who are

22   the principle ATF agents besides yourself that have been

23   involved in that investigation?

24   A    Agent Stephanie Schafer, Agent Kent Crook, who is my

25   supervisor.

6

1        MR. WATKINS:  Sorry, I didn't get that name?

2        THE WITNESS:  Kenneth Crook.

3   A    And Agent Robert White.  Those are the primary

4   individuals.

5   BY MS. LEONEY:

6   Q    And during the course of this investigation, have you

7   spoken with those agents and with the New Bedford police

8   officers that you named and reviewed all of their reports prior

9   to, prior to coming to court today?

10  A    Yes, I have.

11  Q    And with respect to the criminal complaint that issued in

12  this case, are you the affiant on that criminal complaint?

13  A    Yes, I am.

14  Q    And in the course of preparing that criminal complaint,

15  did you review and discuss all of the circumstances surrounding

16  the investigation of Mr. Rivera with those officers and agents?

17  A    Yes, I did.

18  Q    And with respect to your criminal complaint, do you recall

19  the date that you signed the affidavit?

20  A    I do not.  I believe it was April, excuse me, I believe it

21  was June 22nd.

22        MS. LEONEY:  Your Honor, may I approach the witness?

23        THE COURT:  Sure.

24  BY MS. LEONEY:

25  Q    I'm handing you before you a document, and I'd ask you to

7

1  take a look at that please, in particular the document itself,

2  but also the last page the signatory page of the document.

3  A    Yes.

4  Q    Is that the criminal affidavit that you prepared in

5  preparation for the criminal complaint in this case?

6  A    Yes, it is.

7  Q    And is that your signature--

8  A    Yes, it is.

9  Q    -- on the document?  And what is the date that you signed

10 that document?

11 A    June 22nd of this year.

12 Q    Now, since your preparation of that affidavit, has, have

13 you reviewed it again in light of today's probable cause

14 hearing?

15 A    I have.

16 Q    And in light of the arrest of Mr. Rivera, have you

17 reviewed all of the circumstances surrounding Mr. Rivera's

18 arrest?

19 A    Yes, I have.

20 Q    And is the affidavit--

21 A    Everything that's been available to me.

22 Q    And is the affidavit now, having all the information

23 together, is there anything in the affidavit that's not

24 accurate?

25 A    No.

8

1    MS. LEONEY:  At this time, the government would

2    offer the affidavit of Special Agent Hickey as an exhibit.

3    THE COURT:  Any objections?

4    MR. WATKINS:  Not for purposes of this hearing.

5    THE COURT:  Marked Exhibit 1.

6    (Government Exhibit No. 1, admitted)

7    BY MS. LEONEY:

8    Q    Now, Agent Hickey, in your affidavit, you indicate that

9    there was a number of buys involving a firearm, ammunition and

10   drugs, heroin and cocaine to be specific.  You also indicate

11   that those purchases were made by a confidential informant; is

12   that correct?

13   A    That's correct.

14   Q    And with respect to the confidential informant, are you

15   the principle handler for that confidential informant?

16   A    Yes, I am.

17   Q    And since the, since the filing of your affidavit with

18   respect to the arrest of Mr. Rivera, do you know, were you

19   involved in the arrest of Mr. Rivera?

20   A    The planning and organization process.  As far as the

21   actual affecting of the arrest, no.

22   Q    And did you speak with anybody prior to coming here today

23   with respect to Mr. Rivera's arrest--

24   A    Yes.

25   Q    -- circumstances surrounding the arrest?

9

1   A    Yes, I did.

2   Q    What did you learn with regard to the arrest?

3   A    I learned that during the affecting of the search warrant

4   Mr. Rivera was not home, that my supervisor, Ken Crook, called

5   Mr. Rivera and spoke with him and told him the circumstances

6   that were transpiring at the house.  Mr. Rivera told him that

7   he was at work, and he would be leaving work immediately to

8   come and turn himself in.  I believe an hour past, according to

9   my supervisor.  There was no appearance of Mr. Rivera at the

10  house nor did he call my supervisor back.  They attempted

11  another call to him, and I believe--

12            THE WITNESS:  Your Honor, may I refer to my notes

13  real quick?

14            THE COURT:  Sure.

15            MS. LEONEY:  These are notes, I believe, your Honor,

16  that Mr. Watkins has already been given a copy of.

17            THE COURT:  If he has them and you need them to

18  refresh your recollection, go ahead.

19            MR. WATKINS:  That's fine, your Honor.

20            THE COURT:  Go ahead.

21  (Pause)

22  A    About an hour passed, they called him.  He hadn't showed

23  up.  They called him again.  He didn't answer his phone.

24  Approximately two hours later, I believe, is when they finally

25  reached him.  He had his kids call, his mother call and it

1  wasn't until 2:30 that afternoon, approximately 2:30 that

2  afternoon, he finally turned himself in.  Throughout the day,

3  he had made arrangements and not followed up on those

4  arrangements to show up.

5  Q    And during the, if you know, during the course of the

6  telephone conversations with Mr. Rivera and your supervisor,

7  was there discussion on Mr. Rivera's part that he was going to

8  speak to his attorney prior to that time?

9  A    Yes, there was.

10 Q    Did your supervisor or anyone else on the arresting team,

11 or part of your investigation for that matter, ever receive a

12 phone call from an attorney representing Mr. Rivera?

13 A    I don't believe so.

14 Q    And when Mr. Rivera turned himself, finally turned himself

15 in, was he represented by counsel at that time?

16 A    I don't believe so.  I don't know if he showed up at the

17 police department.  I know Mr. Rivera showed up at the police

18 department and turned himself in.  I don't know his attorney

19 was with him.

20 Q    And do you recall who he turned himself into?

21 A    I believe it was Detective Paul Rivera and my boss and my

22 supervisor who is Kenneth Crook.

23 Q    And were there any specific issues with respect to that

24 arrest that you, if you recall, or do you know?

25 A    No.