UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04-10194-NG

**UNITED STATES OF AMERICA**
    Plaintiff

v.

**CARLOS RUBEN RIVERA**
    Defendant

. . . . . . . . . . . . .

TRANSCRIPT OF PROBABLE CAUSE AND
DETENTION HEARING
BEFORE THE HONORABLE CHARLES B. SWARTWOOD, III
UNITED STATES MAGISTRATE JUDGE
HELD ON JUNE 28, 2004

APPEARANCES:

For the Government: Attorney Antoinette Leoney, U.S. Attorney's Office, One Courthouse Way, Boston, MA 02210.

For the Defendant: Timothy Watkins, Esquire, Federal Defender Office, 408 Atlantic Avenue, Third Floor, Boston, MA 02210; (617) 223-8061.

Court Reporter:

Proceedings recorded by digital sound recording, transcript produced by transcription service.

*MARYANN V. YOUNG*
Certified Court Transcriber
240 Chestnut Street
Wrentham, Massachusetts 02093
(508) 384-2003

41

1                    A F T E R N O O N   S E S S I O N

2    (Court called into session)

3            THE CLERK:  The Honorable Charles B. Swartwood

4    presiding.  Today's date is June 28, 2004 in the case of USA v.

5    Carlos Rivera, Criminal Action No. 04-1789-CBS.  Will counsel

6    please identify yourselves for the record.

7            MS. LEONEY:  Good afternoon, I guess by now, your

8    Honor.  Antoinette Leoney for the United States.

9            THE COURT:  Good afternoon.

10           MR. WATKINS:  Good afternoon, your Honor, Tim

11   Watkins, Federal Defender Office on behalf of Carlos Ruben

12   Rivera.

13           THE COURT:  All right.  I was just handed this

14   pretrial services report.  Give me a minute, I want to read it.

15   (Pause)

16           THE COURT: Okay.  I've read it.  All right.  Now with

17   respect to this, Mr. Watkins, do you have any testimony you

18   want to present?

19           MR. WATKINS:  No, your Honor, no testimony.

20           THE COURT:  Then I'm going to hear you on, first I'm

21   going to find probable cause, but now on the issue of

22   detention, let me hear from you, Ms. Leoney.

23           MS. LEONEY:  Thank you, your Honor.

24           As your Honor knows, this case involves guns and

25   drugs.  The government has moved under 3142(f)(1)(A) and (C),

*Maryann V. Young*
**Certified Court Transcriber**
(508) 384-2003

42

1  as well as (f)(2)(A). The government would argue that the
2  offense is also a crime of violence. It involves, although the
3  government has not charged the firearm that was involved in the
4  undercover purchase, the fact of the matter is is that there is
5  a gun that the defendant was in possession of. The government
6  has charged numerous ammunition with respect to that particular
7  charge. The defendant has a prior felony offense, has a drug
8  offense for which he was convicted, going back to 1995 and
9  1996. The fact is that it was a drug distribution charge it
10 appears. It was cocaine. He received a fairly long sentence,
11 though he did not serve much with respect to that sentence. I
12 believe though it was a nine to 10 year sentence.
13         The defendant, what is disconcerting in this case is
14 at the time that the defendant sold that firearm to the
15 confidential informant he, in accordance with the affidavit
16 prepared by Special Agent Hickey, he actually told the
17 defendant, and I quote, "the good thing about these firearms is
18 that they never get jammed up, that's why the mafia uses them."
19 And that's at page 12 to 13 for the Court's reference in the
20 affidavit, but the other thing that he knew at the point in
21 time that the confidential informant was purchasing and the
22 deal had been made, the confidential informant, according to
23 the affidavit, says I'm going to go out and I'm going to make,
24 I think he says I'm going to make things straight. I'm going
25 to take care of a few things, and that was the defendant's

*Maryann V. Young*
**Certified Court Transcriber**
(508) 384-2003

43

1  response with respect to that, I'm going to take care of a few
2  things.  He was under the impression that the confidential
3  informant was going to take that firearm and he was going to go
4  out and he was going to use it.  In spite of that, the
5  defendant sold the confidential informant that weapon knowing
6  that.  The other thing goes towards dangerousness in this case
7  is that this is a man who had been under a restraining order by
8  the New Bedford District Court, and the fact is is that when
9  you look at his criminal history record, he was not only under
10 a restraining order in 2004, it appears from the record that
11 was pulled by pretrial services that he had at least, one, two,
12 three, four orders against him involving a restraining order
13 with respect to his spouse.  In particular, the one that is of
14 much concern, at least for the government at this point in
15 time, is that the last restraining order was not due to expire
16 until May 7th of 2004, and as your Honor knows from the
17 testimony and from the affidavit of Agent Hickey, the drug
18 purchases and the firearm purchase and ammunition purchase
19 occurred in April of 2004.  This man was under an order by the
20 Court not to possess guns, to surrender all guns.  He didn't do
21 that.  If he didn't surrender guns and he was actually selling
22 guns, he not only did not surrender them, he was selling them
23 and if he were to sell them under four court orders, state
24 court orders, not to possess them and to surrender them, what
25 does that tell us about what he might do if he's released from

44

1  this Court. This is not a man who gets it. He doesn't get
2  it. He didn't get it in 1993. He didn't get it in `95. He
3  didn't get it in 2003, and he sure as heck didn't get that in
4  2004 when he sold that firearm to the confidential informant,
5  to the confidential informant.
6        I would argue that that in and of itself shows the
7  propensity of this defendant to maintain his ways with
8  firearms, to sell firearms, to continue dealing drugs after
9  he's received a nine to 10 year sentence just eight years
10 before in New Bedford District Court, Superior Court. I would
11 argue that the community is at risk for this person. If the
12 Court were to allow him to leave it, I do not believe he would
13 stop dealing drugs and/or selling and/or possessing illegal
14 firearms and ammunition.
15       The other issue here is this case involves as your
16 Honor knows three undercover buys, and as you've heard from
17 Agent Hickey and also in the affidavit that these were
18 monitored buys, not only monitored with respect to telephone
19 calls in terms of Agent Hickey himself, but also monitored
20 through surveillance, and they were controlled buys on top of
21 that. Suffice it to say that the evidence in this case appears
22 to be quite strong with respect to conviction and if convicted
23 in this case, the defendant faces a very lengthy prison
24 sentence, a stiff sentence here. He's looking at up to 30
25 years imprisonment on the drug charge alone because of the

45

1  distribution aspect of it. But even if it were just the
2  possession charge, he's looking at up to 20 years imprisonment
3  on each of those charges if he's convicted.
4      As far as the ammunition goes, he's also looking at
5  up to 10 years imprisonment with respect to the ammunition, all
6  of which to say that there is certainly concern that this
7  defendant might flee with respect to what might be at the end
8  of the rainbow for him if he's convicted and we do know that he
9  has not been someone who likes to come to court when he's
10 called to come to court. He has a number of defaults, I say
11 number, he has numerous defaults dating back to 198-, I believe
12 it was 1983 is what I saw, dating back to 1987, `88 excuse me,
13 dating back to 1988, you know, court appearance after court
14 appearance. I mean most of the cases obviously on his record
15 have either been dismissed or null processed but he doesn't
16 show up to court. He may have a long history in the community,
17 he may have family in the community, people may know him, they
18 know where to find him, but this is not a guy, even when it's a
19 null process in a state district court where the sentence if
20 convicted is two years or less. This man is facing upwards to
21 30 years in prison, and I would submit, your Honor, that he is
22 a flight risk. This whole cat and mouse game that he played
23 with ATF when he called in and he spoke to them, I'm working,
24 you know, I've got to contact my attorney, the fact that he had
25 to be coaxed by his wife and his family is another telltale

*Maryann V. Young*
Certified Court Transcriber
(508) 384-2003

46

1  sign that this individual is a flight risk and would tend not
2  to show up.  At the point in time that he was being coaxed in
3  here and playing the cat and mouse game, he didn't know about
4  the, he didn't know about what was in the complaint because it
5  was a sealed complaint if your Honor will recall. So he didn't
6  have access to it.  He didn't know what was in it.
7          So I would submit, your Honor, that not only is
8  Mr. Rivera a danger to the community of New Bedford and
9  elsewhere, he's also a flight risk here, and I would urge your
10 Honor to detain him pending trial on the basis that there are
11 no conditions or combination of conditions that would secure
12 the defendant's appearance here for trial.
13         Thank you, your Honor.
14         THE COURT:  Thank you, very much, Ms. Leoney.
15         Mr. Watkins.
16         MR. WATKINS:  Your Honor, I'll address the risk of
17 flight issue first because I frankly think there's very little
18 risk of flight given Mr. Rivera's circumstances here.  He's a
19 lifetime resident of New Bedford.  He and his wife own a home
20 in New Bedford.  It has a substantial market value, although
21 leveraged and highly encumbered at this point.  It is,
22 Mr. Rivera purports to me really the third house that they've
23 owned in New Bedford as they've climbed up the ladder fixing up
24 homes there and living in them and then reselling them again.
25 All of his family as the Court can see from the pre-sentence