47

1  report are, I'm sorry, pretrial services report, are in the
2  New Bedford area.  He really has no other place to go.  Just
3  turning to Mr. Rivera's record for just a moment.  I'm not sure
4  that the record is quite as replete with defaults as Ms. Leoney
5  suggests.  What I see way back in the 80's are perhaps a day of
6  court cases where someone doesn't make the first call that the
7  default is immediately removed.  That can happen for any
8  variety of cases, someone is in the wrong courtroom, shows up a
9  few minutes late, does not hear the call and really the proof
10 is in the pudding on this.  The one serious case that he does
11 have in Bristol Superior Court where he did make all of his
12 court dates and for almost five years it appears that while
13 it's clear that Mr. Rivera was out on bail that entire time,
14 made all of his court dates for that substantial period of time
15 and showed up even knowing that there was a guilty plea where
16 he was going to be sentenced to a period of incarceration.  So
17 I suggest that rather than suggest of a person who is not going
18 to show up, it's quite the opposite.  This is a person who does
19 take his obligations very seriously and has demonstrated that
20 he takes the obligations very seriously.  Moreover, your Honor,
21 both as to the dangerousness issue and the risk of flight, what
22 is obvious is that Mr. Rivera was on probation for a two year
23 period after he served the one year committed sentenced that he
24 was sentenced to.  We have no information that Mr. Rivera
25 violated his terms of probation.  Certainly, the record does

48

1  not indicate that that is so and as the Court knows, the
2  record would if there was some kind of violation of probation
3  proceedings brought against him.  So again, I suggest far from
4  indicative that he's not going to show up, it is quite the
5  opposite.  It shows that he will show up.  Even notwithstanding
6  all of that, your Honor, we went around quite a bit during the
7  testimony and now about this having to be coaxed in.  I mean,
8  the facts are the facts.  The search warrant was executed at
9  6:00 in the morning.
10             THE COURT:  He showed up.
11             MR. WATKINS:  He showed up.
12             THE COURT:  And he surrendered.  Go ahead.
13             MR. WATKINS:  Coaxing or not, again, we don't have
14  information.  What we do have is his family here today who
15  would be happy to tell the Court about what happened that day
16  trying to get hold of him at work where he was up here in
17  Boston on a, on one of those paving machines with a cell phone
18  and simply did not get the call.  Once he did, he immediately
19  arranged for coverage for him, came down, met with his lawyer.
20  His lawyer really ordered him to her office first, went to
21  another lawyer who I did contact on Friday, a Mr. Walsh, who
22  confirmed that the family had been there and he went down to
23  the police.  He did not confirm to me on Friday that he went
24  down to the police station with him.  I have not been able to
25  contact him today on that score, but as the Court points out he

*Maryann V. Young*
**Certified Court Transcriber**
(508) 384-2003

49

1  did show up of his own accord and was arrested. And
2  Ms. Leoney talks about well he didn't know what he was facing.
3  Sometimes that's the most difficult of circumstances to go in
4  and report when you have no idea what it is that you're charged
5  with. He did so and I suggest that shows that he would show up
6  for this case. He really has to, his family is here, his
7  children. I suppose there's a possibility that he could
8  somehow go to some other place. He's a U.S. citizen, but he
9  would be abandoning his entire life here, substantial property,
10 his children, really all his entire family. I suggest that's
11 simply not going to happen.
12         As far as the dangerousness aspect, your Honor,
13 Ms. Leoney is correct. Under the statute with the drug, that
14 does raise the presumption. The ammunition is probably a
15 closer case, but even assuming there is a presumption there, I
16 suggest what the evidence we heard shows something that's much
17 different from many of the cases the Court hears before it. I
18 would suggest Mr. Rivera, even assuming that things happened in
19 the way that the agent talked about, was somewhat of a
20 reluctant provider of these materials, again, not suggesting
21 that there was not probable cause there, but as we heard from
22 the agent, trying to get the confidential information to get
23 certain things, which he was really unable to do, was not able
24 to get a gun at the drop of a hat and in fact could not that
25 first time. That was borne out by the search warrant where, I

*Maryann V. Young*
Certified Court Transcriber
(508) 384-2003

50

1  believe what we're going to find out is that there were no
2  drugs, no additional guns there.  This goes really to what I
3  suggest the evidence will be, is that Mr. Rivera was a middle
4  person.  If even assuming he did these kinds of things, it is
5  not the kind of a situation where a person has an active
6  business out of his house where he's doing illegal kinds of
7  activities.  Far from it.  As his wife has confirmed, he spends
8  his life working at the union job which he has had for several
9  years and is, pays well.  He does go to work and does those
10 things.  So this is not the kind of individual who has no other
11 thing to do with his time during the day and might easily
12 revert back to doing some kinds of illegal activities.  I think
13 the Court could easily fashion an order of release where
14 Mr. Rivera was limited to his house other than working hours.
15 As referred to already, he does have a job that he's working
16 over at Logan Airport, a construction crew where he can pick up
17 that work tomorrow.  It does involve substantial travel from
18 New Bedford, but outside of those travel hours, the Court could
19 fashion some kind of curfew perhaps if the Court were
20 particularly worried about something happening during the
21 evening, but I simply don't think that's going to be the case.
22 I can tell you that the family is very much behind Mr. Rivera,
23 saddened by the current state of affairs, but very much willing
24 to confront what is happening here.  Mr. Rivera's wife is here
25 in the courtroom.  I know there are issues talking about the

51

1  restraining orders, and it is a fact that these do exist and
2  one was active at least as, until May of 2004. I spoke with
3  Ms. Rivera now about the most recent one. Her memory was that
4  that order was amended to a, refrain from abuse and from a no
5  contact. Obviously, they've been having contact over the last
6  year and she reports to me that they are in fact in the process
7  of reconciling as the report shows. There were issues of
8  infidelity and those are something that are getting worked out.
9  What is clear to me is that both of them have a very serious
10 dedication to their two children, who are teenagers and, one is
11 a teenage, one is a preteen, and that they're both very much
12 dedicated to their upbringing. The difficulty right now at
13 this specific period of time is that the family is in somewhat
14 disparate financial straights. They have leveraged this home
15 that they have with home repairs to the point where they are
16 now a month or so behind on their mortgage payments. They have
17 a variety, very serious kinds of credit card debt. I know the
18 report talked about some, Ms. Rivera, when I've spoken with her
19 has said it's much more serious concerning their indebtedness
20 and she is quite concerned that if Mr. Rivera does not come
21 back to at least try to make the affairs right in the short
22 term, that they will lose the house and be rendered in very,
23 very serious kinds of financial straights.
24         Your Honor, Ms. Leoney talked about the maximum
25 penalties. I've done a run through the guidelines. While

52

1 there is certainly some kind of sentence and it's going to be
2 significant, it is certainly nowhere near the kinds of maximum
3 sentences that are talked about as far as the gun and there is
4 only one prior crime that will qualify under the gun guideline.
5 Similarly, we're not talking about a substantial amount of
6 drugs in the context of the federal system. So it's not the
7 kind of case where Mr. Rivera is going away for a very, very
8 long time and is likely to either not show up or have something
9 else happen.
10            Really, for all those reasons, your Honor, I suggest
11 that the Court could very easily release Mr. Rivera, that he
12 would show up for all of his obligations in this court. He's
13 not going to be any kind of further trouble while he's out
14 there on pretrial release given the family circumstances and
15 his own circumstances. I would ask the Court to consider
16 release on conditions.
17            THE COURT: Thank you. All right. I have a lot to
18 look at. I'm going to take the matter under advisement and
19 make my decision no later than Wednesday. Anything further,
20 Ms. Leoney?
21            MS. LEONEY: No, your Honor, thank you.
22            THE COURT: Mr. Watkins?
23            MR. WATKINS: No, your Honor.
24            THE COURT: Thank you, very much. The Court is in
25 recess.

*Maryann V. Young*
**Certified Court Transcriber**
(508) 384-2003

54

## CERTIFICATION

I, Maryann V. Young, court approved transcriber, certify that the foregoing is a correct transcript from the official digital sound recording of the proceedings in the above-entitled matter.

_____         July 24, 2004
Maryann V. Young